IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| MOHAMMED KHADER, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | 1:10cv1048 (JCC/IDD) |
| ) | |
| HADI ENTERPRISES, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**M E M O R A N D U M   O P I N I O N**

This case is a yet another reminder of why parties transacting business should memorialize their agreements in writing. This matter is before the Court on the Defendants' Motion for to Dismissed Plaintiffs' Amended Complaint [Dkt. 15.] (the "Motion"). For the following reasons, the Court will grant in part and deny in part Defendants' Motion.

**I.  Background**

A.  Factual Background

Plaintiffs Mohammed Khader ("Khader") and Tobacco Station II, LLC ("Tobacco Station"), bring this action against Defendants Hadi Enterprises d/b/a Car King Auto Sales ("Car King"), Marshall Auto Outlet, LLC ("Marshall Auto"), Hazem Abdelhadi ("Hazem"), Mohammed Abdelhadi ("Mohammed"), and Omar Lazkani ("Omar"). The dispute in this case arises from an alleged business agreement between Plaintiffs and Defendants,

1

each in their individual capacities and as representatives of their respective business entities, to buy and sell cars.

According to Plaintiffs' Amended Complaint, on September 15, 2009, Khader entered into a partnership/joint venture with Defendants Hazem, Mohammed, and Omar, in both their individual capacities and as representatives of Car King and Marshall Auto (the "Agreement"). (Am. Compl.[1] ¶ 9.) Certain details regarding the implementation of the subject of the Agreement were finalized on October 7, 2009, in a meeting attended by all parties to this suit. (Am. Compl. ¶¶ 10, 14.) The Agreement provided that Khader would provide $75,000.00 to the individual Defendants to purchase automobiles to be sold at the Car King and Marshall Auto. (Am. Compl. ¶ 8.) Plaintiff Khader used his own funds as well as profits from Tobacco Station to fund his contribution. (Am. Compl. ¶ 2.)

The Agreement was structured so that when the automobiles purchased with Khader's contribution were sold, he would receive his $75,000.00 contribution and one-half of all profits from the sale of those vehicles. (Am. Compl. ¶ 15.) To ensure Khader's participation, Defendants guaranteed Khader he would receive all of his contribution to the Arrangement, under any circumstances. (Am. Compl. ¶¶ 13, 15, 17.) The parties agreed that they would continue in their business arrangement, using the profits from the sale of the cars purchased with

---
[1] Plaintiffs' Amended Complaint [Dkt. 14] will be referred to as "Am. Compl."

Khader's initial contribution. (Am. Compl. ¶ 17.) The Agreement also provided that when the cars purchased with Khader's funds represented one-half of either or both of Car King or Marshall Auto's inventory, Khader would have the option of becoming a 50 percent owner in the car dealership. (Am. Compl. ¶ 18.)

Khader contributed the agreed-to sum to the business arrangement, with which the parties purchased 25 cars. (Am. Compl. ¶ 19.) In a November 8, 2009 meeting, the individual Defendants suggested that Khader contribute an additional $125,000.00 to the arrangement, in exchange for 60 percent of any profits. (Am. Compl. ¶ 20.) By December, Defendants sold the 25 cars purchased with Plaintiffs' initial contribution. (Am. Compl. ¶ 22.) Khader sought the return of his initial contribution and the resulting profits, to no avail. *Id*. Defendants have continued to purchase and sell vehicles, without compensating Khader as provided for in the Agreement, though Khader received a "small sum" on one occasion. (Am. Compl. ¶¶ 23, 30.) Khader alleges that he is entitled to $469,000.00 in profit from the arrangement and the return of his initial contribution. (Am. Compl. ¶ 28.)

B. Procedural Background

Plaintiffs filed an Amended Complaint on November 2, 2010 (the "Amended Complaint"). [Dkt. 14.] Defendants filed a

Motion to Dismiss the Amended Complaint [Dkt. 15] (the "Motion"), and a corresponding Memorandum in Support [Dkt. 16]. On November 29, 2010, Plaintiffs filed an Opposition to the Motion [Dkt. 18] and a corresponding Brief in Support (the "Opposition") [Dkt. 19]. Defendants' Motion is now before the Court.

## II.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). In deciding such a motion, a court must first be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. A court must take "the material allegations of the complaint" as admitted and liberally construe the complaint in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted). Indeed, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the

speculative level." *Id.* at 1965. In its recent decision, *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court expanded upon *Twombly* by articulating a two-pronged analytical approach to be followed in any Rule 12(b)(6) analysis. First, a court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to the presumption of truth. *Id.* at 1951. "[B]are assertions" that amount to nothing more than a "formulaic recitation of the elements" do not suffice. *Id.* (citations omitted). Second, assuming the veracity of "well-pleaded factual allegations," a court must conduct a "context-specific" analysis drawing on "its judicial experience and common sense" and determine whether the factual allegations "plausibly suggest an entitlement to relief." *Id.* at 1950-51. The plausibility standard requires more than a showing of "a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949. In other words, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. Analysis

Plaintiffs allege six claims in the Amended Complaint: (1) Count I, breach of contract; (2) Count II, violations of Virginia Code § 50-73.101(A) and (B); (3) Count III, breach of fiduciary duty in violation of Virginia Code § 50-73.102(B) and

5

(D); (4) Count IV, constructive trust; (5) Count V, fraud; and (6) Count VI, restitution/unjust enrichment.  The Court will address each of the Counts in turn.[2]

   A.   Count I: Breach of Contract

Defendants argue that this claim should be dismissed, because Plaintiff Khader breached the Agreement, thereby foreclosing any rights to enforce the contract.  (Mot.[3] at 4.)

In Virginia, the elements of a claim for breach of contract are (1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of the obligation, and (3) an injury or harm to the plaintiff caused by the defendant's breach.  *Ulloa v. QSP, Inc.*, 271 Va. 72, 79, 624 S.E.2d 43, 48 (2006).  Taking Plaintiffs' allegations as true, Plaintiffs have stated a valid claim for breach of contract.  The parties agreed to use Khader's $75,000.00 contribution to purchase cars, profits from the sale of which would be used to return Khader's contribution and 50 percent of all profits thereafter.  According to the Amended Complaint, Defendants have failed to pay Khader the sums that accrued to him, despite having purchased and sold the 25 cars purchased with Khader's

---

[2] As stated in the Amended Complaint and in Open Court, Tobacco Station was not a party to the Agreement.  Plaintiff Khader, who owns Tobacco Station, added Tobacco Station as a party here only because he made some of his initial contribution to Defendants from his share of Tobacco Station's profits.  Accordingly, the Motion is granted with respect to Plaintiff Tobacco Station as to all counts of the Amended Complaint.
[3] Defendants' Memorandum in Support [Dkt. 16] will be referred to as "Mot."

initial contribution. These facts plausibly state a claim for breach of contract.

Defendants argue that because the exhibits to the Amended Complaint evidence a transfer of only $69,038.00 when the Agreement called for an initial contribution of $75,000.00, Plaintiffs have breached the contract, thereby foreclosing their right to enforce it. This argument is unavailing. When passing on a motion to dismiss, the Court takes the allegations in the complaint as true and tests their sufficiency against the required elements of a claim. The inquiry ends there; it is not required, at this stage in litigation, for a plaintiff to provide evidence proving the veracity of his or her claims or to provide any evidence at all. The Amended Complaint states that Khader provided the required initial contribution. For purposes of the Motion, the Court takes this as true. Accordingly, the Motion will be denied as to Count I of the Amended Complaint.

    B.    <u>Count II: Violations of Virginia Code § 50-73.101(A) and (B)</u>

Plaintiffs allege that Defendants violated the provisions of the Virginia Uniform Partnership Act (the "VUPA") governing a partner's access to the books and records of the partnership. Va. Code Ann. § 50-73.101(A), (B). Defendants argue this claim should be dismissed, because Plaintiffs failed to allege the existence of a partnership. (Mot. at 4.) Specifically, Defendants claim that a partnership could not have

existed as the parties did not intend to "carry on" the business and the parties "did not intend or agree to share in both the profits and losses of the alleged venture." *Id*. The Court must address whether the Amended Complaint sets forth facts that, if taken as true, plausibly suggest the existence of a partnership or some other business arrangement that created fiduciary duties between the parties.

The VUPA defines a "partnership" to "mean[] an association of two or more persons to carry on as co-owners a business for profit." Va. Code Ann. § 50-73.79. The VUPA also address partnership formation, stating that "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." Va. Code Ann. § 50-73.88(A). A key feature of a partnership, distinguishing it, for instance, from a joint venture, is that it is "the conduct of a business for a sustained period for the purposes of livelihood or profit and not merely the carrying on of some single transaction." *Walker, Mosby & Calvert v. Burgess*, 153 Va. 779, 787, 151 S.E. 165, 167 (1930) (citations omitted).

With respect to Defendants' argument that a partnership could not have existed as the parties did not intend to "carry on" the business, Plaintiffs have pleaded that the parties agreed to continue the business arrangement using the

profits from the sale of the initial cars.  (Am. Compl. ¶ 17.)
Plaintiffs also allege that the arrangement provided that the
parties were free to contribute additional money to the
arrangement.  *Id*.  Defendants argue that these are insufficient
to "carry on" a business, because any additional contribution
would be voluntary and "subject to future agreements."  (Mot. at
5.)  As to voluntariness, the allegation that the future
contributions would be voluntary is not enough to establish that
the arrangement was solely for a single transaction.  As to
"subject to future agreement," the Amended Complaint
significantly does *not* allege that.  On the face of the Amended
Complaint, there is no indication that later contributions would
not be subject to the initial agreement.  These facts state a
plausible claim that the parties intended to engage in business
for some period of time, as opposed to merely carrying on a
single transaction.  Accordingly, the Court finds Defendants'
argument unavailing.

With respect to Defendants' argument that a
partnership could not have existed as the parties "did not
intend or agree to share in both the profits and losses of the
alleged venture."  (Mot at 5.)  Defendants point to the
allegations that they guaranteed Plaintiff Khader he would
receive all his contributions under any circumstance.  (Mot. at
6); *see* Am. Compl. at ¶¶ 13, 15.  This fact gives the Court

9

pause, as well. As the Virginia Code provides, a "person who receives a share of the profits of a business is presumed to be a partner in the business, *unless the profits were received in payment* . . . [o]f a debt by installments or otherwise." Va. Code Ann. § 50-73.88(C)(3)(a) (emphasis added); *see also* 59A Am. Jur. 2d Partnership § 162 (2010). A guaranteed return of the initial contribution could lead to a conclusion that the arrangement was not one of co-venturers but of creditor-debtors. After the initial contribution, however, Plaintiff Khader was to share in the profits, receiving 50 percent. As such, he was also to share in 50 percent of the losses going forward. *See* Va. Code Ann. § 50-73.99(B) ("Each partner is entitled to an equal share of the partnership profits and is chargeable with a share of the partnership losses in proportion to the partner's share of the profits.") It is also well-settled that partners can arrange the profit and loss sharing between them as they see fit, and that the sharing of losses in the same manner of profits is only a default provision. Accordingly, at this stage, and with the record undeveloped, the Court will not, as a matter of law, bar the Plaintiffs from alleging the existence of a partnership. While further facts may show that the parties did not intended Plaintiff Khader to share in the losses, as pleaded, the Amended Complaint states a plausible claim of the existence of a partnership.

As to Plaintiffs allegations that Defendants violated the VUPA provisions governing a partner's access to the books and records of the partnership, Va. Code Ann. § 50-73.101(A), (B), Plaintiffs have stated a plausible claim. Plaintiffs allege that Defendants denied several requests by Khader to access the books and records, and as a result they have not accounted for his capital contribution. (Am. Compl. at ¶¶ 45-6.) Taken with the rest of the Amended Complaint, Plaintiffs have sufficiently pleaded these allegations.

    C.    <u>Count III: Breach of Fiduciary Duty in Violation of Virginia Code § 50-73.102(B) and (D)</u>

Plaintiffs next allege that Defendants breached their fiduciary duties to the partnership. Specifically, Plaintiffs argue that Defendants violated the duty of loyalty to "account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct . . . of the partnership business," Va. Code Ann. § 50-73.102(B), and their duty of good faith and fair dealing, Va. Code Ann. § 50-73.102(D). The elements of a claim for breach of fiduciary duty are (1) a fiduciary duty, (2) breach, and (3) damages resulting from the breach. *Carstensen v. Chrisland Corp.*, 247 Va. 433, 444, 442 S.E.2d 660, 666 (1994). For the reasons set forth above with respect to the existence of a partnership and Plaintiffs' breach of contract claim, Plaintiffs have pleaded a claim for breach of fiduciary duty. Fiduciary duties create a

higher duty of care between parties than do contractual duties. It follows logically, then, that one who states a claim for breach of contract and pleads the existence of a partnership has sufficiently pleaded a breach of fiduciary duty.

        D.    <u>Count IV: Constructive Trust</u>

Defendant next argues that because a partnership could not have existed, the Court should dismiss Plaintiffs' claim for a constructive trust. A constructive trust "arises by operation of law, independently of the intention of the parties, in order to prevent what otherwise would be a fraud." *Crestar Bank v. Williams*, 250 Va. 198, 204, 462 S.E.2d 333, 335 (1995) (citing Leonard v. Counts, 221 Va. 582, 589, 272 S.E.2d 190, 195 (1980)). "Such a trust may be established not only when property has been acquired by fraud or improper means, but also when it has been properly acquired but it is contrary to equitable principles that the property should be retained, at least for the acquirer's own benefit." *Id*. For the reasons set forth above, Plaintiffs have pleaded a plausible claim of the existence of a partnership. At this early stage in the proceeding, the Court will avoid limiting Plaintiffs' available remedies.

A constructive trust, however, is an equitable remedy that "[c]ourts of equity may impose . . . whenever necessary to prevent a failure of justice." *Faulknier v. Shafer*, 264 Va.

210, 215, 563 S.E.2d 755, 758 (2002).  An equitable remedy such as a constructive trust is "not in and of [itself a] cause[] of action[] but rather remedies for stated causes of action." *Clarke v. Newell*, No. 1:05CV1013, 2005 WL 3157570, at *5, (E.D. Va. Nov. 23, 2005).  Thus, the Court will recognize the Plaintiffs' Count IV for a constructive trust as a remedy but not as a separate cause of action.

E.  Count V: Fraud

Defendants argue that Plaintiffs' fraud claim should be dismissed, because "Plaintiff[s] ha[ve] alleged facts that support no more than the conclusion that the Defendants have committed a breach of contract."  (Mot. at 7.)  In Virginia, to succeed on a claim for fraud, a party must show "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 618 S.E.2d 316, 321 (2005) (citations omitted).  Defendants quarrel only with the first prong, false representation.  The alleged false representations forming the basis of Plaintiffs' fraud claim are that Defendants had no intention of performing on the promises that they would repay Khader's initial contribution and 50 percent of any profits thereafter.  (Am. Compl. at 17-18.) Defendants argue that these allegations merely show "the

13

existence of a contract, and then seek[] to convert a breach action into a fraud action by flatly asserting--without any further fact--that the other parties to the contract never intend to perform."  (Mot. at 7.)  The Court, then, must address two matters: first, whether an intention to not perform a contract can serve as the basis for fraud; and second, if so, whether the Amended Complaint has sufficiently stated such an intention.

First, the Virginia Supreme Court recently addressed whether an intention not to perform a contract can serves as a basis for a fraud claim.  "In general, 'if a defendant makes a promise that, when made, he has no intention of performing, that promise is considered a misrepresentation of present fact and may form the basis for a claim of actual fraud.'"  *Station # 2, LLC v. Lynch*, 695 S.E.2d 537, 541 (2010) (quoting *SuperValu, Inc. v. Johnson*, 276 Va. 356, 368, 666 S.E.2d 335, 342 (2008)).  In a fraud claim where "the alleged 'false representation' is a mere failure to perform on a promise, [such a false representation] is only sufficient [to form a basis for a fraud claim] if the promisor had no intention of performing at the time the promise was made."  *Id*. at 541 n.5.  Here, Plaintiffs plead precisely that; taking the allegations as true, Defendants induced Plaintiffs to enter into a contract with no intention of performing on the contract when they made the representations to

Khader.  The fraud preexisted the contract and was the basis of its formation.  *See Abi-Najm v. Concord Condominium, LLC*, 280 Va. 350, 363-64, 699 S.E.2d 483, 490 (2010) ("The fraud alleged . . . was perpetrated . . . before a contract between the two parties came into existence, therefore it cannot logically follow that the duty [] allegedly breached was one that finds its source in the [contract].")  Accordingly, an allegation that Defendants had no intention of performing on their promises at the time they were made may serve as the required false representation in Plaintiffs' fraud claim.

Second, though an intention not to perform a contract can serves as a basis for a fraud claim, Plaintiffs have failed to plead such an intention.  Plaintiffs state that at the time Defendants represented that they would repay Khader's initial contribution and 50 percent of the profits thereafter Defendants had no intention of honoring these promises.  (Am. Compl. ¶ 70.)  This allegation, however, is belied by the factual statement in the Amended Complaint that Defendants paid Khader a "small sum." (Am. Compl. ¶ 30.)  That statement illustrates that Defendants performed on the Agreement and, thus, contradicts Plaintiffs' assertion that they entered into it with no intention of doing so.  Taking Plaintiffs' allegations as true, Defendants have not *fully* performed the Agreement, but they *have* performed.  These facts do not plausibly suggest that Defendants had no intention

of performing.  Accordingly, Plaintiffs' fraud claim is dismissed for failing to state a claim.

> F. <u>Count VI: Restitution/Unjust Enrichment</u>

Defendants' Motion seeks to dismiss the Amended Complaint.  The Motion, however, contains to specific argument as to Count VI.  Nonetheless, the Court will address Plaintiffs' Count VI, which seeks "restitution – unjust enrichment" of Plaintiff Khader's initial contribution.  Restitution is an equitable remedy that may be grounded in either a theory of unjust enrichment or in quasi-contract.  *See Pilar Services, Inc. v. NCI Info. Sys., Inc.*, 569 F. Supp. 2d 563, 569 (E.D. Va. 2008).  "In Virginia, a plaintiff alleging unjust enrichment must establish the following elements: (1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value."  *Firestone v. Wiley*, 485 F. Supp. 2d 694, 704 (E.D. Va. 2007) (citation omitted).  For the reasons stated above with respect the remainder of the Amended Complaint, Plaintiffs have sufficiently pleaded facts that may, ultimately, give rise to such a remedy.  Moreover, at this stage in the litigation, the Court will not

foreclose any remedy. Should the Court come to consideration of the proper remedy, this issue will be addressed then.

As stated above with respect to Plaintiffs' constructive trust claim, however, equitable remedies such as restitution, however, are "not in and of [itself a] cause[] of action[] but rather remedies for stated causes of action." *Clarke*, 2005 WL 3157570, at *5. Thus, the Court will recognize the Plaintiffs' Count VI for restitution as a remedy but not as a separate cause of action.

## IV. Conclusion

For these reasons, the Court will grant in part and deny in part Defendant's Motion to Dismiss.

An appropriate Order will issue.

 

|  | /s/ |
|---|---|
| December 22, 2010 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |